# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **MILTON ISAAC, #98321** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO: 10-4591** |
| **BURL CAIN, WARDEN** | * | **SECTION: "C"(3)** |

## <u>REPORT AND RECOMMENDATION</u>

This matter was referred to the United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to Title 28, United States Code, Sections 636(b)(1)(B) and (C), and, as applicable, Rule 8(b) of the Rules Governing Section 2254 cases. Upon review of the entire record, the court has determined that this matter can be disposed of without an evidentiary hearing. For the following reasons, it is

hereby recommended that the instant petition be **DISMISSED WITH PREJUDICE AS SUCCESSIVE.**

<u>PROCEDURAL HISTORY</u>

Petitioner, Milton Isaac, is a state prisoner incarcerated in the Louisiana State Penitentiary in Angola, Louisiana, where he is serving a life sentence, having been convicted on June 17, 1986, of possession of heroin with intent to distribute, in violation of La.R.S. 40:966.[1] Petitioner appealed his conviction and sentence to the Louisiana Court of Appeal, Fourth Circuit, arguing insufficiency of the evidence used to convict.[2] His conviction was affirmed on April 9, 1987, although the court amended his life sentence, which was to be served without benefit of parole, probation, or suspension of sentence, by removing the prohibition against parole.[3] Petitioner failed to seek further review by applying for a writ of certiorari to the Louisiana Supreme Court.

Subsequently, petitioner did apply for post-conviction relief (PCR) in the state courts. In his first PCR application, filed in 1989, petitioner raised a *Brady* claim, an excessive sentence claim, and he asserted that he was denied the effective assistance of counsel. Relief

---

[1]See Docket Master entry and Minute entry dated June 17, 1986, State Rec. vol. 1, in Case No. 311-834 "H", Orleans Parish Criminal District Court. See also Minute Entry dated June 20, 1986 for sentencing, same volume.

[2]State Rec. vol. 3 contains a copy of petitioner's brief on appeal.

[3]See State Rec. vol. 3 for a copy of the unpublished opinion on appeal, *State v. Isaac*, No. KA-6466 (La. App. 4th Cir. 4/9/87).

was denied by the trial court on November 20, 1989[4] and by the Louisiana Court of Appeal, Fourth Circuit on February 5, 1990.[5] On June 14, 1991, the Louisiana Supreme Court, however, granted petitioner's request for supervisory writs in part and denied it in part. The court ordered that petitioner's *Brady* claim be addressed during an evidentiary hearing in the trial court but denied the other two claims raised.[6]

On October 25, 1991, after an evidentiary hearing on petitioner's *Brady* claim, the trial court denied relief.[7] The Louisiana Court of Appeal, Fourth Circuit similarly denied relief,[8] and the Louisiana Supreme Court denied supervisory writs on June 25, 1993.[9]

On or about August 25, 1993, Isaac, spelling his name as "Issac", filed a federal habeas petition in this court, raising a *Brady* claim relative to the non-disclosure of potentially exculpatory information in the police report. This court denied the petition, entering a judgment on December 1st, 1993.[10]

---

[4]A copy of the trial court's decision can be found in State Rec. vol. 5.

[5]A copy of this decision (Writ No. 90-K-0011) can be found in State Rec. vol. 6.

[6]A copy of this decision (Writ No. 2001-K-0369) can be found in State Rec. vol. 7. See also *State v. Isaac*, 581 So.2d 670 (La. 1991).

[7]See State Rec. vol. 6, Transcript of October 25, 1991 hearing at p. 10.

[8]The appellate court determined that the suppressed police report information was not "material" evidence. See State Rec. vol. 6, decision in Writ 91-K-2725, dated January 24th, 1992.

[9]See State Rec. vol. 7, for a copy of the June 25, 1993 decision in Writ 92-KH-0355.

[10]*Milton Issac versus John P. Whitley, Warden*, Civil Action 93-2874 "L"(6)(E.D. La.) See Fed. Rec. Docs. 1 and 5 (Closed Case).

In August of 2000, petitioner filed another post-conviction pleading in the state trial court, styled as a motion for new trial. The trial court denied the motion and a subsequent request for supervisory writs from the Louisiana Fourth Circuit was also denied, on the grounds that the petition was time-barred pursuant to La. C. Cr. P. art. 930.8, on February 23, 2001.[11] On or about March 30, 2001, petitioner, with counsel, filed a request for review of the appellate decision with the Louisiana Supreme Court, in Writ No. 2001-KP-0885. This writ was denied on February 22, 2002.[12]

On March 1, 2007, petitioner, with counsel, filed a motion for new trial with the state trial court based upon newly discovered evidence.[13] The motion was supplemented on August 15, 2007[14] and two hearings were held for the purpose of taking evidence on petitioner's motion, which was subsequently construed as a post-conviction application.[15] The issues raised were the same as are raised before this court: perjured testimony, suppression of

---

[11]See State Rec. vol. 7 for a copy of the February 23, 2001 denial in Writ No. 2001-K-0189.

[12]See State Rec. vol. 8 for a copy of the writ filed in 2001-KP-0885 and the resulting Louisiana Supreme Court decision.

[13]See State Rec. vol. 10 for a copy of the Motion for New Trial.

[14]See State Rec. vol. 10 for a copy of the Supplemental Motion for New Trial.

[15]See State Rec. vol. 6 for Transcripts of Evidentiary Hearings held August 29, 2007 and March 26th, 2008, respectively. See also, State Rec. vol. 10 for a copy of the Motion to Construe Motion for New Trial as a Post-Conviction Application.

evidence in violation of *Brady*, and actual innocence.[16] The trial court ultimately granted

petitioner's post-conviction application on May 30, 2008.[17]

The State, however, sought writs from the Louisiana Fourth Circuit Court of Appeal,

and that court reversed the trial court on October 13, 2008, finding the petition to be both

time-barred and repetitive. The court also addressed the merits in the alternative, finding no

merit to petitioner's claims.[18] A request for supervisory writs relative to the Fourth Circuit's

reversal was filed with the Louisiana Supreme Court on March 11, 2009 and denied by that

court on February 5, 2010.[19]

Petitioner tendered his second federal application for habeas relief with the U.S. Fifth

Circuit Court of Appeals on or about October 4, 2010, seeking authorization to file a second

or successive petition. Based upon claimed "newly discovered evidence", the claims raised

in this petition are as follows: 1) The State knowingly introduced perjured testimony at trial;

---

[16]Petitioner's claim regarding actual innocence is that he is innocent of the crime of possession *with intent to distribute* heroin. He concedes that he would have been guilty of simple possession of heroin.

[17]See State Rec. vol. 9, Transcript of Hearing held May 30, 2008, at pp. 15 and 16.

[18]See State Rec. vol. 9 for a copy of the Fourth Circuit Court of Appeal's decision in Writ No. 2008-K-1084 dated October 12, 2008. A request for rehearing was denied on February 12, 2009.

[19]See State Rec. vol. 9 for a copy of the application filed with the Louisiana Supreme Court and the writ denial, Writ No. 2009-KP-0547.

2) the State withheld exculpatory material evidence from the defense and the jury;[20] and, 3) that petitioner is innocent of the crime for which he stands convicted. On November 22, 2010, the U.S. Fifth Circuit granted authorization, pursuant to §2244(b)(3)(A), for petitioner to file his petition. Specifically, the Fifth Circuit held:

> Isaac has made a *prima facie* showing sufficient to warrant a fuller exploration by the district court, so the motion for authorization is GRANTED. The district court may dismiss the motion if it determines that Isaac's claims do not satisfy the successive standard. See 2244(b)(4). We express no view on how the district court should rule.

See, *In re Milton Isaac*, Docket #10-30981 (5th Cir. 11/22/10).

After the Fifth Circuit has granted an order under §2244(b)(3)(A), "the district court is to decide the §2244(b)(1) & (2) issues fresh, or in the legal vernacular, *de novo*." *Jordan v. Secretary, Dept. of Corrections*, 485 F.3d 1351, 1358 (11th Cir. 2007), citing *In re Johnson*, 322 F.3d 881, 883 (5th Cir. 2003)(court of appeals grant of permission to file a second or successive petition is only tentative and the district court must dismiss the petition if it finds that the statutory requirements for filing one have not been met). See also, *Tyler v. Cain*, 533 U.S. 656, 661 n.3, 121 S. Ct. 2478, 2481 n.3, 150 L.Ed.2d 632 (2001)(court of appeals may authorize such a [successive] filing only if it determines that the applicant makes a "prima facie showing" that the application satisfies the statutory standard. § 2244(b)(3)(C). But to survive dismissal in district court, the applicant must actually "sho[w]" that the claim

---

[20]This claim is commonly referred to as a *Brady* claim, an issue addressed in the U.S. Supreme Court decision, *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

satisfies the standard). Thus, this court must independently determine whether Isaac's current federal habeas application satisfies the standard for filing a successive petition.[21]

FACTS ESTABLISHED AT TRIAL[22]

On the evening of December 3, 1985, a New Orleans police officer was patrolling the Florida Housing Project when he observed a dark sedan parked in the middle of the street. There was a woman seated in the car. He stopped to investigate, however, his investigation was disrupted when he heard a woman shouting from the third story of a nearby building that a man had a gun in someone else's mouth. The officer proceeded to the apartment.

Upon arrival at the apartment the officer found the defendant pinned to the ground by Edgar Barabino. Barabino had a pistol in the defendant's mouth. Barabino tried to shoot the gun, but the officer prevented the gun from firing. As the officer attempted to sort out the situation, he patted down the defendant and recovered $81.00 in cash wrapped around twenty-one packages of heroin. The defendant was wearing a flak jacket. Also, two guns were found in the car parked in the middle of the street, the car in which the defendant arrived. These facts were established through the testimony of the arresting officer.

---

[21]See *Brown v. Lensing*, 171 F.3d 1031, 1032 (5th Cir. 1999)(5th Circuit's authorization for petitioner to file a successive petition is not dispositive; the district court is obligated by the statute to make its own determination that the statutory prerequisites are satisfied.)

[22]The facts are adopted from the Louisiana Fourth Circuit's unpublished opinion in Isaac's direct appeal, Writ No. 87-KA-6466. A copy can be located in State Rec. vol. 9.

Carolyn Harris, the woman seen in the car, testified at trial. She said that she had been with the defendant and Terrell Sterling through the course of the evening. She claims that Terrell Sterling was going through heroin withdrawal, that Isaac had no heroin on him, and that together, she and Isaac left her house in search of drugs.

Officer Frank Benn, an expert in the packaging and distribution of controlled substances, testified that heroin is normally packaged in "bundles" of twenty-five papers, individual packets with a street value of twenty to twenty-five dollars a paper. He acknowledged that a heavy heroin user would use whatever amount of heroin he could get, however, he noted that it would be unusual to find more than two or three papers in the possession of a user. He testified that the heroin seized in this case was consistent with the normal distribution of heroin. He also testified that dealers usually carry guns.

Defendant took the stand in his own defense. He claimed that he was an addict and said that he had gone to Barabino, a known dealer, to purchase heroin for his personal use. He stated that when he found himself short of money he attempted to take cash and drugs from Barabino, a scuffle ensued and defendant was subdued. Barabino was called by the state in rebuttal and testified that he did not sell drugs. Barabino suggested that if the defendant had been found in possession of heroin, he must have had the drugs at the time he entered the apartment.

## SUCCESSIVE PETITION

Section 2244, one of the gatekeeping provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214 (1996), was enacted primarily to preclude prisoners from repeatedly attacking the validity of their convictions and sentences. *In re Cain*, 137 F.3d 234, 235 (5th Cir. 1998). "This provision, by curtailing the availability of 'second or successive habeas corpus application(s),' seeks to prevent state prisoners from abusing the writ of habeas corpus." *Id.*, citing *Felker v. Turpin*, 518 U.S. 651, 116 S.Ct. 2333, 2340, 135 L.Ed.2d 827 (1996). The AEDPA, however, does not define what constitutes a "second or successive" application. *In re Cain*, 137 F.3d at 235. "In determining what is a 'second or successive' motion under the statute, the circuits which have reviewed this question use the 'abuse of the writ' standard." *Reeves v. Little*, 120 F.3d 1136, 1138 (10th Cir. 1997),citing *In re Gasery*, 116 F.3d 1051 (5th Cir.1997); see also *Felker*, 518 U.S. at 664, 116 S.Ct. at 2340. Under the abuse of the writ doctrine, a petition is "second or successive" if it raises claims that were or could have been adjudicated on their merits in an earlier petition. See *McClesky v. Zant*, 499 U.S. 467, 494-95, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

The U.S. Supreme Court has explained:

"AEDPA greatly restricts the power of federal courts to award relief to state prisoners who file second or successive habeas corpus applications. If the prisoner asserts a claim that he has already presented in a previous federal habeas petition, the claim must be dismissed in all cases. § 2244(b)(1). And if the prisoner asserts a claim that was not presented in a previous petition, the claim must be dismissed unless it falls within one of two narrow exceptions.

One of these exceptions is for claims predicated on newly discovered facts that call into question the accuracy of a guilty verdict. § 2244(b)(2)(B). The other is for certain claims relying on new rules of constitutional law. § 2244(b)(2)(A)."

*Tyler v. Cain*, 533 U.S. at 661-62, 121 S.Ct. at 2481-2482. Isaac bears the burden of demonstrating that his successive federal habeas application falls within one of the two exceptions and thus should not be dismissed. *Mathis v. Thaler*, 616 F.3d 461, 467 (5th Cir. 2010). It is the second exception contemplated by §2244(b)(2) that Isaac asserts applies to his case, as he contends that his claims arise out of new evidence.[23]

28 U.S.C. §2244(b)(2)(B), the relevant provision, provides:

"[a] claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless –

(B)(I) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

(ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error,

---

[23]Review of Isaac's prior federal habeas petition shows that he only raised the claim, pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), that there was exculpatory, material evidence *in the police report* that was not revealed to the defense. This evidence, Isaac argued, could have been used to undermine the testimony of witness Edgar Barabino. Although Isaac currently brings a *Brady* claim (as claim two) in the instant federal petition, it differs from the earlier *Brady* claim. The new *Brady* claim does not arise out of the suppression of the police report that was attacked in the earlier petition. Instead, it is based upon new evidence in the form of two witness recantations, evidence that petitioner asserts establishes the prosecutor's misconduct at trial. Since none of the claims he brings in the instant federal petition are the same as were litigated in the 1993 petition, Isaac's petition is not subject to dismissal pursuant to §2244(b)(1).

> no reasonable factfinder would have found the applicant guilty
> of the underlying offense.

The U.S. Fifth Circuit has referred to the exception under 28 U.S.C. §2244(b)(2)(B) as an "actual innocence exception". *Kinsel v. Cain*, 647 F.3d 265, 269 (5th Cir. 2011).

All three claims raised in the instant petition, according to Isaac, stem from "new evidence" which he discovered after he filed his first federal petition on August 25, 1993 and after a final judgment was issued relative to that petition on December 1, 1993. The "new" evidence which petitioner contends entitles him to file a successive federal habeas petition consists of the following:

1) *The November 28th, 2000 affidavit and the March 26, 2008 testimonial recantation of Carolyn Harris* : In her affidavit, Harris, defendant's former girlfriend who testified for the State at trial, reported that she had initially told the prosecutor that Isaac had obtained money from Terrell Sterling, a friend, so that Isaac might obtain drugs from Edgar Barabino *in order to alleviate his own drug withdrawal symptoms*. Harris stated that the prosecutor, Glynn Alexander, coerced her into stating at trial, however, that the drugs obtained by Isaac were purchased for him *to distribute to Sterling because Sterling was experiencing drug withdrawal.* Harris, therefore, indicated that her testimony at Isaac's trial was false; that she testified falsely because she was assured by the prosecutor that Isaac would only get ten years of jail time and that she was also assured she would be granted immunity from prosecution.

At the evidentiary hearing, Harris also claimed that the prosecutor had assisted her with her expenses and housing at trial and helped her acquire Section 8 subsidized housing after trial. Isaac argues that Harris' false testimony was critical to establish his intent to distribute heroin.

2) *The July 30, 2007 affidavit and the August 29, 2007 testimonial recantation of Edgar Barabino*: On July 30, 2007, Edgar Barabino signed an affidavit that claimed that Isaac had tried to steal heroin from Barabino for his own addiction and not to give, sell or otherwise distribute the drugs to anyone else. Barabino reported that the A.D.A. assigned to the case threatened to bring drug charges against Barabino or members of his family if he refused to testify falsely at trial. At a state evidentiary hearing held on August 29, 2007, Barabino testified that, on the date of the crime, Milton Isaac came to him and asked to buy some heroin from him that was supplied to Barabino by a dealer both he and Milton had frequented in the past. When Barabino refused to sell the heroin to him, Isaac produced a gun and attempted to take the heroin from him. Barabino repeated at the hearing the claim that the State had coerced his "false testimony" at trial by telling him that he and his family would be charged with possession with intent to distribute heroin if he did not cooperate.[24] At trial, Barabino had testified, as a rebuttal witness for the State, that Isaac had robbed him only of $61.00 and that he (Barabino) did not have any drugs on him or in his house. This testimony,

---

[24]Testimony of Edgar Barabino, Transcript of Proceedings dated August 29, 2007 at pp. 9-17.

Isaac argues, suggested to the jury that Isaac was a drug dealer and the drugs seized from Isaac were in his possession before his altercation with Barabino.

Isaac must meet both prongs of 28 U.S.C. §2244(b)(2)(B), in order to prevail. A failure to meet either prong bars the instant federal habeas from this court's consideration as successive.

A.    *Meeting the Due Diligence standard*

The first requirement to be met by petitioner in order to have his second habeas petition considered is that the factual basis for the constitutional claim must not have been discoverable at the time the first federal petition was filed. 28 U.S.C. § 2244(b)(2)(B)(I). "[D]ue diligence is measured against an objective standard, as opposed to the subjective diligence of the particular petitioner of record." *Johnson v. Dretke*, 442 F.3d 901, 908 (5th Cir. 2006). The burden to make a showing of due diligence remains with the petitioner. *Id*. Moreover, in a successive petition where a *Brady* claim is urged, as is the case here, the petitioner may not rely solely upon the ultimate merits of the *Brady* claim in order to demonstrate due diligence under §2244(b)(2)(B). *Id.* at 911(merits of *Brady* cannot be collapsed with the due diligence requirements of 2244(b)(2)(B)(I)). Regardless of possible prosecutorial misconduct, petitioner must still show that the facts underlying his *Brady* claim could not have been previously discovered through the exercise of due diligence. *Id.* at 910-11.

The State argues that petitioner knew of the factual predicate for his claim at the time of trial, specifically when Barabino testified that petitioner only took money and not drugs from him and when Harris testified that petitioner was obtaining the drugs for distribution to Terrell Sterling rather than for his own usage. If petitioner knew this testimony was incorrect, the State asserts, he knew it at the time the lies or false testimony was offered at trial and the factual basis of his claims was thus 'available" when he filed his first federal habeas in 1993.

Isaac counters that the State misunderstands his claim. He asserts that his claim is not that the witnesses lied. Instead, it is that the "new evidence" shows that the State knowingly introduced false testimony and coerced such testimony. He asserts that he could not have known of the State's misconduct until the witnesses were willing to come forward with such information.[25] The court finds that Isaac's argument has some merit.

Although Isaac certainly would know that witnesses were giving false testimony at his trial, the motives behind such testimony would be concealed. The State's argument ignores the distinction between a witness's own false testimony (which would be subject to cross-examination at trial) and the alleged misconduct on the part of the State that suborned such false testimony (conduct which was unchallengeable at trial). The factual predicate for

---

[25]Fed. Rec. Doc. 14, Reply to State's Answer.

petitioner's claims of perjured testimony and the suppression of exculpatory evidence[26] is not petitioner's belief that a witness was lying but rather that the lying was being done at the behest of the State. Until the witnesses came forward (through affidavits or recantation testimony) with information about the state's misconduct, Isaac could not have known the factual basis of his claims. Thus the burden to be imposed on petitioner is to show that, at the time he filed his federal habeas petition in 1993, he could not have obtained the recantation evidence from Carolyn Harris or Edgar Barbarino which he now presents to this court as the factual predicate of his *Brady* and/or perjured testimony claim, or any other evidence to establish the State's alleged misconduct.

As to Carolyn Harris, the record is clear that her affidavit was first obtained on November 28th, 2000.[27] In her affidavit executed in 2000, Harris mentioned that she was given immunity in return for her "false" trial testimony and had also been assured by the state's prosecutor that Isaac would only be given a ten year sentence, if he was convicted. When she was allowed by the trial court to testify on March 26, 2008, she reported that it was her daughter's questions about what had happened to her father (Isaac) and her own

---

[26]The court only considers Isaac's *Brady* and perjured testimony claims in its analysis. To the extent that Isaac asserts, as his third claim, a freestanding actual innocence claim as a constitutional violation, such a claim standing alone is not cognizable in federal habeas review. Unless he can prove an independent constitutional violation, *ie.*, his *Brady* claim or his perjured testimony claim, this court is prohibited from entertaining his alleged "actual innocence" as a substantive claim. See *Herrera v. Collins*, 506 U.S. 390, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993); *Kinsel*, 647 F.3d at 271 n. 20; and, *Graves v. Cockrell*, 351 F.3d 143, 151 (5th Cir. 2003).

[27]See State Rec. vol. 1 for a copy of Ms. Harris's affidavit.

conscience that made her finally come forward. She also reported that she had not been truthful at trial because she was granted immunity by the prosecution for her own crimes, was given financial assistance by the state and was given assistance by the D.A.'s office in her efforts to acquire Section 8 (subsidized) housing, all in return for her false testimony.[28] Although the fact of Harris' grant of immunity was made known to the jury at trial, the allegation that the prosecutor played a role in coercing her false testimony and may have provided Harris with a financial incentive to testify falsely was not known.

The state appellate court reviewed the issue of when petitioner became aware of the facts supporting his claims but within the context of determining whether a state procedural bar based on untimeliness and/or repetitiveness may be applicable to petitioner's post-convictions claims.[29] The court determined that petitioner had, or should have had knowledge of the basis of Harris' perjured testimony when he pursued earlier state post-conviction relief. Additionally, the state appellate court specifically found that petitioner was

---

[28]Testimony of Carolyn Harris, Transcript of Proceedings dated March 26, 2008 at pp. 22-23. The court notes that the state appellate court, in reversing the trial court's granting of post-conviction relief, found some reasons to suspect the veracity of Harris' recantation testimony. See Opinion of the Louisiana Court of Appeal, Fourth Circuit in Writ No. 2008-K-0841, State Rec. vol. 9. At this juncture, however, this court is concerned with *when* was the "new evidence" relative to the recantation available to petitioner rather than whether the 2008 testimony/ recantation by Harris was truthful. Nothing in the record or in the state court's determinations of fact undermines this court's finding that the year 2000 was the first time that Harris came forward with her recantation.

[29]State Rec. vol. 9, Opinion of the Louisiana Fourth Circuit Court of Appeal in Writ No. 2008-K-0841.

put on notice of Harris' recantation as of November 2000. This factual determination is consistent with this court's finding that the factual basis regarding Harris' false testimony was not discoverable despite due diligence until November 2000. Since the first federal petition was filed in 1993, petitioner meets the due diligence standard as to Harris' recantation.

With regard to Edgard Barabino, the record shows that he came forward with his recantation via affidavit and testimony in 2007. During the evidentiary hearing held by the state trial court, Barabino testified that he was prevented from telling the truth at trial because the State coerced him by threatening him and his family with drug charges. He explained that he had never gone to any of petitioner's attorneys to tell them the truth of why he gave false testimony at petitioner's trial, prior to the time he executed his affidavit in 2007. When asked why he was coming forward in 2007, Barabino stated, "Well, after serving all those years in prison myself, and this was like a nightmare to me, you know, that I knew that this man was innocent, you know..." He affirmed that he didn't provide truthful information about what happened on the night of petitioner's arrest until his "conscience" made him

come forward.[30] Barabino's affidavit and testimony thus appears, on the surface, to have not been available until 2007, prior to the filing of the first federal petition.[31]

However, the state appellate court reviewed the issue of when petitioner became aware of the facts supporting his claim that Barabino gave false testimony and made a different factual finding.[32] The state court noted that Isaac had previously pursued a *Brady* claim in his earlier 1989 post-conviction proceeding based upon a comment written in the police report that indicated Barabino had told police Isaac had heroin in his possession. The state appellate court thus found that since the police report conflicted with Barabino's testimony at trial that he was unaware of any drugs, this conflict was sufficient to put Isaac on notice of Barabino's perjured testimony. The court found the bases of both claims (the 1989 *Brady* claim and the claim that the state knowingly offered perjured testimony/*Brady*

---

[30]Testimony of Edgar Barabino, Transcript of Proceedings dated August 29, 2007 at pp. 15-17.

[31]Petitioner did attempt to prove that Barabino gave false testimony at trial when he brought an earlier post-conviction claim in the state courts, asserting that the police report indicated that Barabino, who claimed not to know that Isaac had drugs in his pocket at trial, allegedly advised the police at the time of Isaac's arrest that Isaac "was in possession of heroin". See police report, a copy of which is located in State Rec. vol. 10, and Transcript of Proceedings dated October 25, 1991 (state evidentiary hearing on Brady violation/ suppression of police report.) Only the assistant district attorney who prosecuted Isaac testified at this hearing. Since Barabino did not testify, the factual allegations regarding the State's alleged misconduct in the presentation of his false testimony could not be ascertained.

[32]The state court made this determination when deciding whether to apply a state procedural bar based upon untimeliness and/or repetitiveness.

violation) to be "nearly identical".[33] Based upon the finding that the claims were nearly the same, the state appellate court went on to find that Isaac therefore had notice of the factual basis of his claim regarding Barabino's false testimony in 1989. If this court were to accept this factual finding of the state court, Isaac would be deemed to have notice in sufficient time to file his claim regarding Barabino when he filed his 1993 habeas petition in federal court.

As previously discussed, it appears to this court that there is a distinction between a claim that a witness is testifying falsely and a supported allegation that the prosecutor has knowingly presented perjured testimony, i.e., testimony which he knew was false. The latter necessarily requires evidence that the false testimony was *suborned* by the prosecutor due to misconduct.[34] Moreover, when the state trial court denied petitioner's 1989 *Brady* claim, it was on the basis of a lack of materiality.[35]  No specific finding was made in 1989 as to whether the prosecutor was aware of the potentially exculpatory evidence and failed in his obligation to provide it to the defense or whether there was any misconduct on the part of the State.

---

[33]See Opinion of the Louisiana Court of Appeal, Fourth Circuit in Writ No. 2008-K-0841 at p. 9, State Rec. vol. 9.

[34]To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and *that the prosecutor knew they were false*. *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir.1998)(emphasis added).

[35]See Trial Judge's Reasons for Denying *Brady* claim at State Rec. vol. 10, Transcript of Proceedings dated October 25, 1991 at pp. 9-10.

Although the issue of whether a successive federal habeas petition should be entertained is a question of federal law, it is important to note that the U.S. Fifth Circuit has indicated that the factual findings made by the state courts are entitled to a presumption of correctness when addressing whether the requirements of §2244(b)(2)(B) are satisfied. See *Kinsel*, 647 F.3d. at 270.[36] If this court is bound by the state's factual finding, Isaac is thus barred from raising his claim based on Harris' recantation and he can only proceed to the second prong of §2244 (b)(2)(B) as to his claim regarding Carolyn Harris.

The court need not resolve this conflict. Section 2244(b)(2)(B) requires both of its prongs to be satisfied before Isaac can pass through the gateway. Since Isaac cannot prevail on the second prong, it is unnecessary for the court to make a determination as to when Isaac knew about the factual basis of his claim as to Edgar Barabino.

*B.*    Establishing that, but for Constitutional Error,
       Petitioner Would Not Have Been Found Guilty

The second prong which petitioner must clear, pursuant to 2244(b)(2)(B), in order to file his second federal habeas petition pertains to a showing of "actual innocence". "This actual innocence exception thus allows a petitioner to overcome the AEDPA's bar on

---

[36]Under the AEDPA, a factual finding by the state court would require a federal habeas court to presume said finding to be correct and the petitioner would bear the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. §2254(e)(1); *Coleman v. Quarterman*, 456 F.3d 537, 541 (5th Cir. 2006), *cert. denied*, 549 U.S. 1343, 127 S.Ct. 2030, 167 L.Ed.2d 772(2007). This deference to factual findings extends to credibility determinations made by the state courts. *Id.*

successive applications and pass through the 'gateway' to argue the merits of his habeas claims if he establishes by clear and convincing evidence that the outcome of the trial would have been different but for the constitutional error." *Kinsel*, 647 F.3d at 269. In sum, petitioner must show that the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for the State's knowing presentation of false testimony, no reasonable jury would have found him guilty of possession of heroin with intent to distribute. See *Johnson v Dretke*, 442 F.3d at 911; 28 U.S.C. §2244(b)(2)(B)(ii). As the court explained in *Johnson*, "This standard has been described as 'a strict form of innocence' . . . roughly equivalent to the Supreme Court's definition of 'innocence' or 'manifest miscarriage of justice' in *Sawyer v. Whitley*."[37] *Id.* at p. 11, citing 2 Randy Hertz & James S. Liebman, Federal Habeas Corpus Practice and Procedure §28.3e, at 1459-60 (5th ed. 2005).

In *Sawyer*, the U.S. Supreme Court was asked to decide what standard should be applied to a petitioner, who was convicted of first degree murder, and wanted to bring a successive federal habeas claiming that he was "actually innocent" not of his crime but of his eligibility for the death penalty. The petitioner in *Sawyer* sought to have the court excuse the successive bar on the grounds that the State had violated *Brady* and suppressed mitigating

---

[37]Referencing *Sawyer v. Whitley*, 505 U.S. 333, 112 S.Ct. 2514, 120 L.Ed. 2d. 269 (1992). *Sawyer* was a pre-AEDPA case but based upon the Fifth Circuit's use of its guidance in the 2006 *Johnson v. Dretke* case, noted above, *Sawyer* is still considered instructive.

evidence which the jury should have considered when it decided whether to impose the death penalty. The Court stated that the "actual innocence" requirement in such a case "must focus on those elements that render a defendant eligible for the death penalty, and not on additional mitigating evidence that was prevented from being introduced as a result of the claimed constitutional error." *Sawyer*, 505 U.S. at 347, 112 S.Ct. at 2523. Agreeing with the Eleventh Circuit's opinion in *Johnson v. Singletary*, 938 F.2d 1166 (1991), the *Sawyer* Court provided the following test:

> "Thus, a petitioner may make a colorable showing that he is actually innocent of the death penalty by presenting evidence that an alleged constitutional error implicates all of the aggravating factors found to be present by the sentencing body. That is, but for the alleged constitutional error, the sentencing body could not have found any aggravating factors and thus the petitioner was ineligible for the death penalty. In other words, the petitioner must show that absent the alleged constitutional error, the jury would have lacked the discretion to impose the death penalty; that is, that he is ineligible for the death penalty."

In Isaac's case, he does not contend that he is actually innocent of the crime of heroin possession. What he challenges is the jury's finding that he was guilty of the crime of possession of heroin *with the intent to distribute said heroin.* His life sentence directly flows from the jury's finding that he intended to distribute the drugs which were found in his pocket when he was arrested. Following *Sawyer*'s lead, this court must review what other evidence was offered to the jury to support a finding of Isaac's "intent to distribute" heroin.

Under Louisiana law, narcotic offenses involving possession with intent to distribute require proof of specific intent. See *State v. Butler*, 760 So.2d 322 (La. 2000); *State v. Elzie*, 343 So.2d 712, 714 (La. 1977). Specific criminal intent is the "state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequence to follow his act or failure to act." *Elzie*, 343 So.2d at 714 citing La. R.S. 14:10(1). Intent to distribute may be inferred from the circumstances. R.S. 15:445; *State v. Greenway*, 422 So.2d 1146, 1148 (La.1982).

At trial, the State presented the evidence of petitioner's intent to distribute drugs primarily through expert testimony, the testimony of law enforcement, and through the physical evidence. As an expert in the field of drug packaging and distribution, Sergeant Frank Ben[38] testified that heroin packaged for distribution is generally bundled in lots of 25, in either cellophane, peanut, glassine bags or tin foil packets. Each packet contains approximately 6-8 tenths of a gram of heroin. He also testified that both dealers and jackmen (someone who robs drug dealers) usually carry guns. He explained that, although heavy heroin users would use as much heroin as they could acquire, it was unusual to see a simple

---

[38]The state appellate opinion indicates that the Sergeant's name was Frank Benn. The trial transcript indicates that his name is spelled "Ben".

addict with more than 2-3 bags. Finally, he testified that the packaging of the heroin seized in Isaac's case was consistent with heroin distribution.[39]

Arresting officer Michael Conn also provided testimony relevant to the issue of whether petitioner had the specific intent to distribute heroin. Officer Conn reported that when he patted Isaac down, he discovered twenty-one packages of heroin with $81.00 in cash, mostly in one dollar bills, rolled around it. He also noted that Isaac was wearing a flak jacket, which he explained was clothing designed to provide protection from shrapnel and similar to a bullet-proof vest. Conn indicated that he also found two inserts for the flak jacket inside the car that Isaac had used to travel to meet Barabino. Each insert would provide additional protection from higher caliber rounds of ammunition. Also, two guns were found by the officer in the car used by Isaac. The drugs and weapons that were seized from Isaac, along with the flak jacket, were entered into evidence for the jury's consideration.

Focusing on this *other evidence* that supported a finding by the jury that petitioner. had the intent to distribute heroin, in accordance with *Sawyer*, the court finds petitioner cannot meet the heavy burden of showing he is actually innocent of the crime of possession with intent to distribute heroin. Although Barabino's failure to acknowledge the heroin as his own and Harris' testimony that the drugs were intended for another (Sterling) may have corroborated the evidence of distribution already established through Officer Conn and the

---

[39]State Rec. vol 9; Trial Transcript dated June 17, 1986 at pp. 73-83 (testimony of Sergeant Frank Ben).

expert testimony of Sergeant Benn, it was not the primary nor the strongest evidence used by the State to meet the "intent to distribute" element of the crime charged.[40] Based upon the other evidence which supports the conviction as charged, Isaac fails to meet his burden under 28 U.S.C. §2244(b)(2)(B)(ii).

Although the other evidence of intent to distribute heroin is sufficient to bar Isaac's petition, the court also considers, in an abundance of caution, the conflict between the trial testimony which the jury heard and the "new evidence" presented through the recantations of Harris and Barabino at the two state evidentiary hearings held in 2007 and 2008. State court credibility determinations may be relevant when a federal habeas court is tasked with determining whether a petitioner has actually satisfied §2244(b)(2)(B)'s successive requirements. See *Kinsel*, 647 F.3d. at 270 n.19.

In this case, the state district judge, who presided over the evidentiary hearings in 2007 and 2008, but not the trial, granted post-conviction relief. The state district judge, finding the evidentiary hearing testimony of Harris and Barabino to be "valid and credible", determined that had the jury heard the testimony which she felt was "omitted" at trial, i.e., Harris' post-trial (recanted) statement that Isaac was obtaining the heroin to alleviate his own drug withdrawal symptoms and Barabino's post-trial claim that the heroin was, in fact, his,

---

[40]Barabino, in fact, was called as a rebuttal witness by the State and not in the prosecution's case-in-chief.

that the verdict in the case would have been different.[41]  The state appellate court, however,

disagreed.

In discussing the "veracity of recantations", the Fourth Circuit provided the following

analysis:[42]

> Apart from the immateriality of the new evidence, there are factors that cast
> a shadow over the truthfulness of the recanted statements.  These factors
> indicate the new evidence would not create reasonable doubt in the minds of
> a new jury in the event a new trial was permitted.  In addition to the
> inconsistencies between the witnesses' trial testimony and their evidentiary
> hearing testimony [FN14] we find suspect the differences between the
> statements made in Ms. Harris' affidavit executed in November 2000 and
> those made in the 2007 motion for new trial and evidentiary hearing testimony.
> Importantly, at the evidentiary hearing, Ms. Harris attributed one of the
> motives for perjuring herself was premised on Assistant District Attorney
> Alexander's provision of temporary housing and payment of her expenses
> prior to the date of the defendant's trial and permanent federal assisted housing
> following the trial.  Moreover, it was alleged in the motion for new trial that
> she was coerced to falsely testify at the defendant's trial by a named
> investigating police office[r](sic).  However, Ms. Harris never made these
> assertions in her affidavit executed six years earlier.  Specifically, she never
> referenced that she was allegedly coerced by anyone but Assistant District
> Attorney Alexander.  As to her motive for perjuring herself, she only cited in
> the affidavit being given immunity by the prosecution and an assurance of a
> maximum ten-year sentence for the defendant.  Conversely, while she
> mentioned being given immunity at the evidentiary hearing, she failed to state
> the prosecution's promise of a maximum sentence for the personal benefit of
> the defendant.

---

[41]State Rec. vol. 9, Transcript of proceedings dated March 30, 2008 at p. 16.

[42]See Opinion of the Louisiana Court of Appeal, Fourth Circuit in Writ No. 2008-K-0841
at pp. 13-14, State Rec. vol. 9.

We find these glaring omissions of critical facts, when coupled with Ms. Harris' personal interest in the outcome of the proceeding as the mother of the defendant's child, shed viable suspicion on the credibility and reliability of Ms. Harris' recantation. The law is abundantly clear that "recantations of trial testimony are highly suspect and, <u>except in *rare circumstances* should a second trial be granted</u> on the basis of a recantation since that disclaimer is tantamount to admission of perjury so as to discredit the witness at a later trial." [Emphasis added.] *State v. Prudholm*, 446 So.2d at 736. Based on the totality of the evidence, the present facts do not constitute "rare circumstances" warranting a new trial. As such, we conclude the defendant's post conviction claims could be denied alone as to the issue of the veracity of the recanted statements of Ms. Harris and Mr. Barabino.

> FN14: Mr. Barabino, as part of his recantation, stated he was coerced by the prosecution to state at trial that the defendant was a drug dealer, so as to support the criminal element of intent to distribute. However, the trial testimony indicates Mr. Barabino made no such assertion. Additionally, Ms. Harris alleged she was coerced into testifying at trial as to the whereabouts of the defendant's best friend when she left with the defendant for Mr. Barabino's residence. Again, the trial testimony is absent such an assertion.

Having reviewed the 2000 affidavit submitted by Harris, the 2007 affidavit submitted by Barabino, as well as the 1986 trial testimony and the 2007 and 2008 evidentiary hearing testimony of both witnesses, this court finds the state appellate court's determination that the recantations made by Harris and Barabino are inherently suspect is reasonable. In particular, considering the various discrepancies between Harris' trial testimony, affidavit and evidentiary hearing testimony, as noted by the state appellate court in its opinion, a reasonable fact-finder would simply find her unworthy of belief. Additionally, Janice Isaac, petitioner's aunt, was called by the defense at the state evidentiary hearing to give testimony to corroborate petitioner's claim that he was merely a drug addict rather than a dealer and to

support Harris' statement that she obtained Section 8 housing in a relatively short period of time from the date she filed her application. The state court deemed Ms. Isaac's testimony on these facts "speculative" at best but noted that it was additionally damaging to Ms. Harris's credibility. Ms. Isaac testified that she had to take care of Harris' and Isaac's child for many years while Isaac was in prison because Ms. Harris' lifestyle included heavy drug usage and criminal activity.[43] The state court reasonably found that this testimony cast another "shadow" over the reliability of Harris' recantation.

Finally, the state appellate court is correct that Barabino's attempt to recant his trial testimony included a claim that he had falsely identified Isaac as a drug dealer at trial. A thorough review of the trial transcript shows, however, that Barabino never made such a claim at trial. He denied that he himself was a dealer,[44] and implied that if Isaac had drugs, they did not come from him but were in Isaac's own possession.[45] However, he did not explicitly claim that Isaac was a drug dealer or a distributor of drugs. Additionally, Barabino's 2007 affidavit did not identify A.D.A. Alexander as the prosecutor who coerced him to lie at trial although he did identify him as such at the evidentiary hearing.

---

[43]The state court discussed Janice Isaac's damaging testimony in its discussion of petitioner's claim of prosecutorial misconduct in presenting perjured testimony. See Opinion of the Louisiana Court of Appeal, Fourth Circuit in Writ No. 2008-K-0841 at pp. 15 n. 15, State Rec. vol. 9.

[44]State Rec. vol. 9, Trial Transcript at p.138.

[45]State Rec. vol. 9, Trial Transcript at p. 143.

In sum, considering the strength of the evidence of petitioner's intent to distribute heroin, which was before the jury at trial, and the unreliability of the recantations made to support petitioner's claim of actual innocence, petitioner fails to meet the heavy burden set forth in 2244(b)(2)(B) for the filing of a second, successive federal habeas.[46]

## RECOMMENDATION

Accordingly,

For the foregoing reasons, IT IS HEREBY RECOMMENDED that the instant petition for federal *habeas corpus* relief filed by Milton Isaac be DISMISSED as successive and an abuse of the writ.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996)(en banc).[47]

---

[46]Since the court finds Isaac's successive habeas application is barred by the AEDPA, it need not address the merits of the claims raised nor the defenses of procedural bar and time-bar urged by the State.

[47]*Douglas* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to

New Orleans, Louisiana, this 18th day of October, 2012.

_____

DANIEL E. KNOWLES
UNITED STATES MAGISTRATE JUDGE

---

fourteen days.