**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**MILTON ISAAC**                                          **CIVIL ACTION**

**VERSUS**                                                    **NO:   10-4591**

**BURL CAIN**                                               **SECTION: "C" (2)**

## ORDER & REASONS

Before the Court is a petition for habeas corpus under 28 U.S.C. § 2254 filed by Milton Isaac.  He asserts as grounds for relief that:  (1) the State knowingly introduced perjured testimony at trial; (2) the State withheld exculpatory material evidence from the defense and the jury; and (3) he is innocent of the crime for which he stands convicted. Rec. Doc. 3 at 5-8.  The Magistrate Judge reviewed the petition and recommended that the Court dismiss it as successive, and the petitioner has objected to the report.  Rec. Docs. 16 & 17.  The Court has independently reviewed the petition, the record, the applicable law, the Magistrate Judge's Report and Recommendation, and the petitioner's objections thereto.  The Court adopts only the procedural history and facts of petitioner's arrest and conviction, as well as the standard of review, from the Magistrate Judge's Report and Recommendation as part of its opinion.  For the reasons given below, the Court sustains the petitioner's objections and grants habeas relief.

### I. PROCEEDINGS

Milton Isaac was convicted of possession of heroin with intent to distribute in 1986 and

sentenced to life in prison. *Id.* at 1 n.1.[1]  After his conviction was affirmed on direct appeal, Isaac

filed a petition for post-conviction relief in state court, asserting a *Brady* claim, an excessive

sentence claim, and an ineffective assistance of counsel claim. *Id.* at 16 at 2.  The state trial court

denied the petition, and the Louisiana Court of Appeals for the Fourth Circuit affirmed. *Id.* at 3.

The Louisiana Supreme Court grants writs in part, however, and ordered an evidentiary hearing

on petitioner's claim, under *Brady*, that the state failed to disclose potentially exculpatory

information from a police report. *Id.*  The trial court conducted a hearing and denied relief, as did

the Louisiana Court of Appeals for the Fourth Circuit and the Louisiana Supreme Court. *Id.*

Isaac then filed a federal habeas petition seeking relief based on the *Brady* claim, and

specifically raising a *Brady* claim relative to the non-disclosure of potentially exculpatory

information in the police report. *Id.*  This court denied the petition. *Id; Milton Issac versus John*

*P. Whitley, Warden*, Civil Action 93-2874 "L"(6) (E.D. La.).

Isaac again sought relief in state court in 2000 and 2007. Rec. Doc. 16 at 4.  The first

time, relief was denied. *Id.*  The second time, with the assistance of counsel, Isaac filed a motion

for a new trial based on newly discovered evidence:  The two key witnesses at his trial had

recanted and sworn that the district attorney had pressured them into lying on the stand in order

to convict Isaac. *Id.*[2]  The court held two hearings on petitioner's motion, which asserted as

grounds for relief the same grounds urged here. *Id.* at 4-5.[3]  After hearing and observing the

---

[1]Although Isaac states that he has been released on parole, he is still in custody in violation of his Federal Constitutional rights. He states that his parole is for life. Rec. Doc. 17 at 2. 28 U.S.C. §2254(a); *Jones v. Cunningham*, 371 U.S. 236, 83 S. Ct. 373, 9 L. Ed. 2d 285 (1963).

[2]See State Rec. vol. 10 for a copy of the Motion for New Trial.

[3]*See* State Rec. vol. 6 for Transcripts of Evidentiary Hearings held August 29, 2007 and March 26, 2008.

witnesses at the hearing, the trial court granted Isaac relief. *Id.* at 5.  The state appealed the trial court's grant of relief to the Louisiana Fourth Circuit, and it reversed. *Id.*

Isaac then petitioned the United States Court of Appeals for the Fifth Circuit for authorization to pursue a second or successive federal habeas petition. *Id.* at 6. *See, In re Milton Isaac*, Docket #10-30981 (5th Cir. 11/22/10).  The Fifth Circuit held that Isaac had made a *prima facie* showing of actual innocence based on the newly discovered evidence introduced in the last state court proceeding and granted him authorization. Rec. Doc. 3 at 18.  This proceeding ensued.

### II. SUCCESSIVE PETITION

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") permits, in relevant part, a state court prisoner to file a second or successive habeas petition only if "the factual predicate for the claim could not have been discovered previously through the exercise of due diligence" and "the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonably factfinder would have found the applicant guilty of the underlying offense."  28 U.S.C. § 2244(b)(2)(B)(I)-(ii).  After a Court of Appeals has granted a petitioner leave to file a second or successive petition under § 2244(b)(3)(A), the district court must decide these issues *de novo*.  *In re Johnson*, 322 F.3d 881, 883 (5th Cir. 2003).  Although the Court agrees with the Fifth Circuit's finding that Isaac should be allowed to proceed based on newly discovered evidence, including affidavits and testimony from Harris and Barbarino that the state coerced them to testify falsely and knowingly elicited false testimony from them to secure a conviction, it has conduct its own analysis *de novo*. Rec. Doc. 3 at 17-18.

1. Due Diligence

All three claims raised in the instant petition stem from new evidence that Isaac discovered after he filed his first federal habeas petition in 1993.[4]  The new evidence that petitioner contends entitles him to file a successive federal habeas petition consists of the following:

a) *The November 28th, 2000 affidavit and the March 26, 2008 testimonial recantation of Carolyn Harris*: In her affidavit, Harris, Isaac's former girlfriend who testified for the State at trial, reported that she had initially told the prosecutor that Isaac had obtained money from Terrell Sterling, a friend, so that Isaac might obtain drugs from Edgar Barbarino in order to alleviate his own drug withdrawal symptoms. Rec. Doc. 3, Exh. 1.[5]  Harris stated that the prosecutor, Glynn Alexander, coerced her into stating at trial, however, that the drugs obtained by Isaac were purchased for him to distribute to Sterling because Sterling was experiencing drug withdrawal. *Id.*  Harris, therefore, indicated that her testimony at Isaac's trial was false; that she testified falsely because she was assured by the prosecutor that Isaac would only get ten years of jail time; and that she was also assured she would be granted immunity from prosecution. *Id.*  At the evidentiary hearing in state court, Harris also claimed that the prosecutor had assisted her with her expenses and housing at trial and helped her acquire Section 8 subsidized housing after trial.[6]  Isaac argues that Harris' false testimony was critical to establish his intent to distribute

---

[4]The Court only considers Isaac's *Brady* and perjured testimony claims in its analysis. A freestanding actual innocence claim as articulated in Isaac's third claim as a constitutional violation is not cognizable in federal habeas review. *Herrera v. Collins*, 506 U.S. 390, 404, 113 S.Ct. 853, 862, 122 L.Ed.2d 203 (1993).

[5]State Rec. vol. 1 for a copy of Ms. Harris' affidavit.

[6]See State Rec. vol. 6 for Transcript of Evidentiary Hearings held August 29, 2007.

4

heroin. Rec. Doc. 3 at 35; Rec. Doc. 17 at 7.

      b) *The July 30, 2007 affidavit and the August 29, 2007 testimonial recantation of Edgar Barabino*: On July 30, 2007, Edgar Barabino signed an affidavit that claimed that Isaac had tried to steal heroin from Barabino for his own addiction and not to give, sell or otherwise distribute the drugs to anyone else. Rec. Doc. 3 at 87, Exh. 3.  Barabino reported that the Assistant District Attorney assigned to the case, Alexander, threatened to bring drug charges against Barabino or members of his family if he refused to testify falsely at trial. *Id.*  At a state evidentiary hearing held on August 29, 2007, Barabino testified that, on the date of the crime, Milton Isaac came to him and asked to buy some heroin from him that was supplied to Barabino by a dealer both he and Milton had frequented in the past. *Id.* at 101.  When Barabino refused to sell the heroin to him, Isaac produced a gun and attempted to take the heroin from him. *Id.* Barabino repeated, at the hearing, the claim that the State had coerced his "false testimony" at trial by telling him that he and his family would be charged with possession with intent to distribute heroin if he did not cooperate. *Id.* at 98.  At trial, Barabino had testified, as a rebuttal witness for the State, that Isaac had robbed him only of $61.00 and that he (Barabino) did not have any drugs on him or in his house.[7]  This testimony, Isaac argues, suggested to the jury that Isaac was a drug dealer and the drugs seized from Isaac were in his possession before his altercation with Barabino. Rec. Doc. 3 at 23.

      The State argues that petitioner knew of the factual predicate for his claim at the time of trial, specifically when Barabino testified that petitioner only took money and not drugs from him and when Harris testified that petitioner was obtaining the drugs for distribution

---

[7]*See* State Rec. vol. 9 for Trial Transcript dated June 17, 1986 at 138-42 (testimony of Barabino).

to Terrell Sterling rather than for his own usage. *Id.* at 29-30.  If petitioner knew this testimony

was incorrect, the State asserts, he knew it at the time the lies or false testimony was offered at

trial and the factual basis of his claims was thus "available" when he filed his first federal

habeas in 1993. Rec. Doc. 11 at 6.  The State claims that Isaac "could" have discovered that

Barabino perjured himself. *Id.*

   Isaac counters that the State misunderstands his claim. Rec. Doc. 17 at 11.  He asserts

that his claim is not that the witnesses lied. Instead, it is that the "new evidence" shows that the

State knowingly introduced false testimony and coerced such testimony. He asserts that he could

not have known of the State's misconduct until the witnesses were willing to come forward with

such information. *Id.* 7.

   Although Isaac certainly would know that witnesses were giving false testimony at

his trial, the motives behind such testimony would be concealed. The State's argument

ignores the distinction between a witness's own false testimony (which would be subject to

cross-examination at trial) and the alleged misconduct on the part of the State that suborned

such false testimony (conduct which was unchallengeable at trial).

   The factual predicate for petitioner's claims of perjured testimony and the suppression of

exculpatory evidence is not petitioner's belief that a witness was lying but rather that the lying

was being done at the behest of the State. Until the witnesses came forward (through affidavits

or recantation testimony) with information about the State's misconduct, Isaac could not have

known the factual basis of his claims. Thus the burden to be imposed on petitioner is to show

that, at the time he filed his federal habeas petition in 1993, he could not have obtained the

recantation evidence from Carolyn Harris or Edgar Barabino which he now presents to this court

as the factual predicate of his Brady and/or perjured testimony claim, or any other evidence to establish the State's alleged misconduct.  Barabino informed petitioner's mother that he had been suborned into perjury sometime before Hurricane Katrina struck New Orleans. Rec. Doc. 3 at 23. It is not clear from the record that petitioner knew about Barabino's revelation to his mother. What is clear is that Barabino decided to speak with petitioner's lawyer about the new evidence in 2007 and that he signed a sworn affidavit attesting that the State had educed him to lie on July 30, 2007. *Id.* at 24.  This is after the petitioner's earlier habeas proceeding in 1993.

As to Carolyn Harris, the record is clear that her affidavit was first obtained on November 28th, 2000. Rec. Doc. 3 at 25.  This is also after petitioner's earlier habeas petition was filed.  In her affidavit executed in 2000, Harris mentioned that she was given immunity in return for her "false" trial testimony and had also been assured by the state's prosecutor that Isaac would only be given a ten year sentence, if he was convicted. Rec. Doc. 3, Exh. 1 at 40. When she was allowed by the trial court to testify on March 26, 2008, she reported that it was her daughter's questions about what had happened to her father (Isaac) and her own guilt about lying that made her come forward.[8]

This Court disagrees with the Magistrate Judge's Report and Recommendation that Isaac met the due diligence standard of §2244(b)(2)(B) only as to his claim regarding Carolyn Harris. Rec. Doc. 16 at 20.  Petitioner has shown that regardless of his previous *Brady* claim, he could not have previously discovered the prosecutorial misconduct that he alleges regarding Barabino or Harris through the exercise of due diligence before his previous habeas petition.  Additionally, petitioner has established "actual innocence" by showing that but for the Constitutional error, he

---

[8] See State Rec. vol. 6 for Transcripts of Evidentiary Hearings held August 29, 2007 at 25.

would not have been found guilty.

    2. Facts Underlying the Claims

    The Court, next, evaluates whether the other evidence offered to the jury supports a finding of Isaac's intent to distribute heroin. *Sawyer v. Whitley*, 505 U.S. 333, 347, 112 S.Ct. 2514, 2523, 120 L.Ed.2d 269 (1992).  At trial, the State submitted evidence and called three witnesses in addition to Harris and Barabino.  Arresting officer Michael Conn testified "and Mr. Isaac was wearing a flap jacket."[9]  He explained that a flap jacket was "used in the military for shrapnel."[10]  He also stated that he removed $81 from Mr. Isaac's person and 20 individual packets.[11]  Later, under cross-examination, he testified that Isaac had 21 packets of heroin.  Conn also testified that there was a gun that *Mr. Barabino* (not Mr. Isaac) had at the time of the incident.[12]  He testified about additional inserts for the jacket and weapons that were found in Isaac's car.[13] Conn also testified that in addition to arresting Mr. Isaac, he arrested Mr. Barabino, who had Isaac pinned on the ground and was holding a gun in Mr. Isaac's mouth when Conn arrived on the scene, for assault rather than attempted murder.[14]  Conn also testified that he never saw Isaac chemically manufacture, dispense or distribute heroin.[15] Additionally, Conn never saw

---

[9]*See* State Rec. vol. 9 for Trial Transcript dated June 17, 1986 at 7 (testimony of Conn).

[10]*Id.*

[11]*Id.* at 8.

[12]*Id.* at 9.

[13]*Id.* at 12.

[14]*Id.* at 19.

[15]*Id.* at 22.

Isaac take money and drugs from an individual.[16]  Conn admitted that he never found out

whether the heroin in Isaac's possession at the time of his arrest  came from Mr. Barabino.[17]  The

testimony goes to the petitioner's own heroin use, and without further support does not appear to

prove petitioner intended to distribute heroin.

Officer Edgar Dunn testified on behalf of the State.[18]  He worked in the Crime Laboratory

for the New Orleans Police Department.[19]  He testified that he received 20 packets in evidence

and tested four which he found positive for heroin.[20]

Sergeant Frank Ben also testified as an expert.  He testified that "[heroin is] normally

packaged in lots of 25, which is called a bundle."[21]  He further testified that one dosage unit is

one pack and that the price of a pack in 1985 would be "roughly $20 to $25."[22]   Ben also

testified that a "normal" heroin user will use two to three bags per time he shoots heroin, and that

"a person will shott [stet] heroin as many times as he can afford to go to the cooker during the

course of a day."[23] As much as Ben's testimony may have helped the State to point out that

heroin dealers would have had several packets in a "bundle," it also hurt the government.  Based

on Ben's calculation, it is likely that Isaac would have had more than $81 if he were selling

--------

[16]*Id.* at 23.

[17]*Id.* at 26.

[18]*Id.* at 31 (testimony of Dunn).

[19]*Id.*

[20]*Id.* at 33-34.

[21]*Id.* at 73 (testimony of Ben).

[22]*Id.* at 74.

[23]*Id.* at 80.

heroin at the price to which Ben testified.

The Court finds that petitioner overcomes AEDPA's bar on successive applications and deserves to argue the merits of his claim because he has established by clear and convincing evidence that but for the State's knowing presentation of false testimony, no reasonable jury would have found him guilty of possession of heroin with intent to distribute. *Johnson v. Dretke*, 442 F.3d 901, 911 (5th Cir. 2006) (relying on *Sawyer v.* Whitley, 505 U.S. at 333, for the "'strict form of 'innocence'" standard*); Kinsel v. Cain*, 647 F.3d 265, 269 (5th Cir. 2011) (stating the standard in a case where petitioner alleges constitutional error based on new evidence that the prosecutor knowingly presented false testimony is that absent the constitutional error, no reasonable factfinder would have found petitioner guilty of the underlying offense).

### III. VIOLATION OF A CONSTITUTIONAL RIGHT

Isaac's claim that the government elicited perjured testimony and suppressed evidence are both claims based on violations of his fundamental Constitutional rights.  As petitioner has argued, a conviction obtained by the use of known perjured testimony cannot stand. *Mooney v. Holohan*, 294 U.S. 103, 115, 55 S.Ct. 340, 343, 79 L.Ed. 791 (1935).  A prosecutor may not knowingly use false evidence, or allow false evidence to go uncorrected. *Naupe v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959).  Additionally, the State violates due process when it withholds exculpatory evidence from the defense. *Brady v. Maryland*, 373 U.S. 83, 88, 83 S.Ct. 1194, 1197, 10 L.Ed.2d 215 (1963).  The facts recounted above make clear that the State concealed perjured testimony from the petitioner and withheld exculpatory evidence.

The judge that conducted evidentiary hearings on this matter in State court, Judge Camille Buras, found Barabino and Harris' testimony to be credible and granted a new trial on

10

May 30, 2008.[24] A state court's findings are given the presumption of correctness. *Kinsel*, 647 F.3d at 270.  The Louisiana Fourth Circuit Court of Appeals, which overturned the hearing court's findings, was not the finder of fact, and in this highly factual instance, this Court defers to Judge Buras' findings. *See Pippin v. Dretke*, 434 F.3d 782, 792 (5th Cir. 2005) ("A trial court's credibility determinations made on the basis of conflicting evidence are entitled to a strong presumption of correctness and are 'virtually unreviewable' by the federal courts.")

Harris and Barabino were induced to falsely testify. Furthermore, the prosecutor let perjured testimony stand in violation of the *Mooney/Naupe* line of cases.  Additionally, when the prosecution suppresses evidence, it violates due process if the evidence is material to either guilt or punishment. *Brady*, 373 U.S. at 87. The duty to disclose applies even in the absence of a request from the defendant. *Strickler v. Green*, 527 U.S. 263, 280, 119 S.Ct. 1936, 1947, 144 L.Ed.2d 286 (1999).  Evidence is "material" where there is a reasonable probability that, had the evidence been disclosed at trial, the result of the proceeding would have been more favorable to the accused. *United States v. Bagley*, 473 U.S. 667, 684, 105 S.Ct. 3375, 3384, 87 L.Ed.2d 481 (1985). The reversal of a conviction is required when "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles v. Whitley*, 514 U.S. 419, 435, 115 S.Ct. 1555, 1566, 131 L.Ed.2d 490 (1995).  To prevail on a *Brady* claim, a habeas petitioner must show that the evidence was: (1) favorable, (2) material, and (3) withheld by the prosecution. *Drew v. Collins*, 964 F.2d 411, 419 (5th Cir. 1992).

The evidence at issue here was material to Isaac's guilt.  The Court defers to the opinion

---

[24]Transcript Hearing May 30, 2008 at 15-16.

of the trial court in finding validity in both the *Mooney/Naupe* and the *Brady* claims.  The trial court entertained "many hearings on this case, [and] many filings by both sides."[25]  Judge Buras ruled: "The [State] Court grants post-conviction relief in this matter. Finding that, not just the testimony that was educed at trial, but the omissions in the testimony of the witness at trial . . . . [had] [t]he cumulative effect of those omissions in the testimony relative to all the facts surrounding the issues of what happened that day in Edgar Barrimino's [stet] apartment were not made known to the jury."[26]

Furthermore, the judge ruled:

"That had the jury heard the full testimony of what this Court believes to be valid and credible testimony on post-conviction evidentiary hearing from Edgar Barrimino [stet] and Carolyn Harris, that had the Court heard that testimony, the verdict in this case would have been different.

"And, therefore, again, the Court grants post-conviction relief in this matter ordering that a new trial be granted based upon what the Court feels was an improper verdict in the matter."[27]

Petitioner has shown that favorable, material evidence was knowingly withheld by the prosecution.  That evidence included that the prosecution suborned perjury from two witnesses. The affidavits from Harris and Barabino both state that the State induced them to submit perjured testimony.  Moreover, each witness stated that at trial, and Judge Buras found their testimony to

---

[25]*Id.* at 15.

[26]*Id.* at 16.

[27]*Id.*

be credible.[28]  The Court agrees with the petitioner that by knowingly introducing perjured testimony at trial and withholding exculpatory material evidence from the defense and jury, petitioner's Constitutional rights were violated.  *Mooney*, 294 U.S. at 115; *Brady*, 373 U.S. at 88.

Accordingly,

IT IS ORDERED that the petitioner's objections to the Report and Recommendation of the Magistrate Judge are GRANTED.

IT IS FURTHER ORDERED that the Report and Recommendation of the Magistrate Judge is adopted by the undersigned only as to the sections on "PROCEDURAL HISTORY" and "FACTS ESTABLISHED AT TRIAL." Rec. Docs. 16 & 17.

IT IS FURTHER ORDERED that the petition for habeas relief is GRANTED and judgment is to be entered in favor of the petitioner and against the State. Rec. Doc. 3.

IT IS FURTHER ORDERED that the State shall either retry the petitioner within 180 days of this order or dismiss the charges.  The state shall notify the petitioner and the Court of its intention within 60 days of this ruling.

New Orleans, Louisiana this 27th day of August, 2013.

HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE

---

[28]*Id.* at 16.